AOYAGI, J.
*298 Defendant caused a traffic accident in which two people were killed and one person was seriously injured. In connection with the accident, he was charged and convicted of manslaughter, assault, heroin possession, DUII, and reckless endangerment. On appeal from the judgment, defendant asserts five assignments of error. We reject his first three assignments of error without discussion. For the reasons that follow, we conclude that defendant's fourth and fifth assignments of error, which relate to sentencing and attorney fees, are meritorious. Accordingly, we reverse the attorney fee award and remand for resentencing. Otherwise, we affirm.
After ingesting heroin and methamphetamine, defendant fell asleep while driving his car, crossed the center line of a road, and collided head-on with another vehicle. The two men in the other vehicle died at the scene. Defendant's girlfriend, who was a passenger in his car, suffered serious injuries. Defendant was charged with numerous crimes. After a jury trial, he was convicted of two counts of manslaughter in the second degree, ORS 163.125 (Counts 1 and 2); assault in the third degree, ORS 163.165 (Count 3); possession of heroin, ORS 475.854 (Count 4); driving under the influence of intoxicants, ORS 813.010 (Count 5); and recklessly endangering another person, ORS 163.195 (Count 6).
*432 In line with the state's sentencing recommendation, the court sentenced defendant to a term of 75 months' imprisonment on Count 1; 75 months' imprisonment on Count 2; 18 months' imprisonment on Count 3; six months' imprisonment on Count 4; six months' imprisonment on Count 5; and six months' imprisonment on Count 6. All of the terms were to be served consecutively, except that the term for Count 6 was to be served concurrently with that for Count 3. The sentence on Count 4 was a dispositional departure.[1] Defendant's presumptive sentence for that count *299 under the sentencing guidelines was 18 months' probation, but the court instead sentenced him to six months' imprisonment. The court explained that it did so both because defendant would be in prison on the other convictions and therefore unavailable for supervision and because of the impact of defendant's crimes. The court also imposed a term of post-prison supervision, and it ordered defendant to pay restitution, fines, and $4,600 in attorney fees.
In his fourth assignment of error, defendant asserts that the trial court erred in sentencing him to six months' imprisonment on Count 4. As he did below, defendant argues on appeal that it was error for the court to impose a dispositional departure sentence on Count 4 without advance notice, as provided in ORS 136.765, that the state intended to rely on enhancement facts to increase his sentence. The state concedes that it did not give any notice of enhancement facts to defendant, but it contends that no notice was required under ORS 136.765.
As a starting point to address ORS 136.765, it is necessary to understand the line of United States Supreme Court cases that underpins it, beginning with Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as well as some of our own caselaw. In Apprendi , the Court held that, under the Sixth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. "[T]he Court adopted the rule in Apprendi to address determinate sentencing schemes that defined the maximum sentence for an offense but permitted a trial court to enhance the sentence for that offense if the trial court found certain 'sentencing factors' by a preponderance of the evidence." State v. Cuevas , 358 Or. 147, 159, 361 P.3d 581 (2015).
Four years later, in Blakely v. Washington , 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court clarified "that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.) Thus, the Court *300 held that the rule of Apprendi precludes judicial factfinding under a sentencing guidelines scheme in which the court may impose upward departure sentences based on findings of fact. Id. at 303-05, 124 S.Ct. 2531.
Soon thereafter, our own Supreme Court addressed the effect of Apprendi and Blakely on Oregon's presumptive sentencing scheme. In short, it recognized that Blakely precludes judicial factfinding in support of upward departure sentences, unless the defendant effectively waives the right to have the jury find the aggravating facts. State v. Dilts , 337 Or. 645, 103 P.3d 95 (2004). "Under Blakely , the Sixth Amendment entitles a defendant to have a jury determine any aggravating factor that a court may then use to justify a sentence that exceeds the presumptive range." State v. Upton , 339 Or. 673, 681, 125 P.3d 713 (2005).
In 2005, in response to Blakely , the Oregon legislature enacted a statutory mechanism, codified at ORS 136.760 to 136.792, for notifying a defendant that the state intends to use "enhancement facts" to increase a sentence beyond the presumptive sentence *433 under the sentencing guidelines and for submitting those facts to the jury. Or. Laws 2005, ch. 463; see State v. Roberts , 231 Or. App. 263, 270, 219 P.3d 41 (2009), rev. den. , 347 Or. 608, 226 P.3d 43 (2010) (describing genesis of ORS 136.765 ). An "enhancement fact" is "a fact that is constitutionally required to be found by a jury in order to increase the sentence that may be imposed upon conviction of a crime." ORS 136.760(2). "[T]he undisputed purpose of ORS 136.760 to 136.792 is to safeguard a defendant's Sixth Amendment right to jury trial on sentence enhancement facts." State v. Hylton , 230 Or. App. 525, 530, 216 P.3d 899, rev. den. , 347 Or. 349, 222 P.3d 30 (2009).
As to notice, ORS 136.765 provides:
"In order to rely on an enhancement fact to increase the sentence that may be imposed in a criminal proceeding, the state shall notify the defendant of its intention to rely on the enhancement fact by:
"(1) Pleading the enhancement fact in the accusatory instrument; or
"(2) Providing written notice to the defendant of the enhancement fact, and the state's intention to rely on it, no *301 later than 60 days after the defendant is arraigned on an indictment, waives indictment or is held to answer following a preliminary hearing, or 14 days before trial, whichever occurs earlier, unless the parties agree otherwise or the court authorizes a later date for good cause shown."
Thus, if a fact is "constitutionally required" to be found by a jury rather than a judge, it is an enhancement fact, ORS 136.760(2), and the state must give the defendant advance notice that it intends to rely on that fact to increase the defendant's sentence, ORS 136.765.
In State v. Buehler , 206 Or. App. 167, 136 P.3d 64 (2006), we applied Apprendi and Blakeley to hold that, when a defendant's presumptive sentence for an offense is probation, sentencing the defendant to imprisonment is an upward dispositional departure that requires jury findings. In that case, as here, the defendant's presumptive sentence was probation on each count, but the court sentenced him to imprisonment based on the court's own findings. Id. at 169, 136 P.3d 64. The state argued in Buehler that the departure sentences did not violate the defendant's Sixth Amendment rights because they were merely dispositional and the maximum statutory sentence should be understood, at least for Apprendi purposes, as including the six months' imprisonment and 24 months' post-prison supervision that the court was authorized to impose if probation was revoked. Id. at 169-70, 136 P.3d 64. We rejected that argument, explaining that, because a court's authority to revoke probation depends on events that necessarily must occur after sentencing, the presumptive sentence at the time of sentencing must be understood as the probationary term alone. Id . at 171, 136 P.3d 64 ; see OAR 213-010-0001 (giving court discretion to revoke probation upon finding that the offender has "violated one or more of the conditions of probation" or "participated in new criminal activity").
Three years after Buehler , the United States Supreme Court decided Oregon v. Ice , 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). The issue in Ice was whether to extend the rule of Apprendi to a trial court's determination whether to impose sentences consecutively or concurrently. See ORS 137.123 (stating that sentences shall run concurrently unless the court finds certain statutorily described facts, in which case it has the discretion to order the sentences to *302 run consecutively). The Court declined to extend the rule of Apprendi to that determination.[2] It reasoned that such determination was not historically within the jury function, and also recognized the states' sovereign interest in the development of their criminal justice systems. Ice , 555 U.S. at 168-71, 129 S.Ct. 711.
In this case, it is undisputed that the state did not provide any notice of enhancement facts to defendant. And it is undisputed that the trial court found the facts relevant to *434 defendant's dispositional departure sentence on Count 4. The state concedes that, under Buehler , the trial court therefore erred. The state argues, however, that our reasoning in Buehler is no longer sound in light of Ice . It argues that the same two considerations recognized in Ice , i.e. , historical practice and respect for state sovereignty, suggest that we should "overrule Buehler in light of Ice and hold that dispositional departure sentences are not subject to the Apprendi rule and thus are not subject to the statutory procedure for establishing 'enhancement facts.' " As with consecutive sentences, the state argues, "[j]udicial factfinding under a presumptive-probation rule does not encroach on the historical authority of juries, and a presumptive-probation rule is a type of modern mitigating rule that states are free to develop without being constrained by a requirement for jury findings." We disagree and, for the reasons that follow, adhere to Buehler .[3]
Although the Court in Ice relied on historical practice and respect for state sovereignty in declining to extend Apprendi to consecutive sentencing, the Court also recognized in Ice a critical distinction between the administration of multiple sentences and the imposition of sentence for a discrete crime. See Cuevas , 358 Or. at 155, 361 P.3d 581 (explaining that, under Ice , "the rule in Apprendi provides a means for *303 determining the elements of an individual offense that a jury must decide beyond a reasonable doubt," but "does not extend to a trial court's decision to impose individual sentences consecutively" (emphasis added) ). In our view, that distinction supports the reasoning of Buehler .
As articulated by the Court, the question presented in Ice was as follows:
"When a defendant has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions , does the Sixth Amendment mandate jury determination of any fact declared necessary to the imposition of consecutive, in lieu of concurrent, sentences?"
555 U.S. at 163, 129 S.Ct. 711 (emphasis added). In answering that question in the negative-i.e. , in declining to extend the rule of Apprendi to Oregon's "regime for administrating multiple sentences," id. at 168, 129 S.Ct. 711 -the Court observed that other contexts in which it had applied the rule of Apprendi "involved sentencing for a discrete crime," whereas Ice involved "multiple offenses different in character or committed at different times," id. at 167, 129 S.Ct. 711. It thereby distinguished Ring v. Arizona , 536 U.S. 584, 602, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("facts subjecting a defendant to the death penalty"); Blakely , 542 U.S. at 304-05, 124 S.Ct. 2531 ("facts allowing a sentence exceeding the 'standard' range in Washington's sentencing system"); United States v. Booker , 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("facts prompting an elevated sentence under then-mandatory Federal Sentencing Guidelines"); and Cunningham v. California , 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) ("facts permitting imposition of an 'upper term' sentence under California's determinate sentencing law"). Ice , 555 U.S. at 167-68, 129 S.Ct. 711.
In discussing Cunningham , the Court in Ice reiterated Apprendi 's "core concern: a legislative attempt to 'remove from the province of the jury' the determination of facts that warrant punishment for a specific statutory offense." Id. at 170, 129 S.Ct. 711 (quoting Apprendi , 530 U.S. at 490, 120 S.Ct. 2348 (brackets omitted) ); see also Southern Union Company v. United States , 567 U.S. 343, 349, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012) (reiterating "core concern" of Apprendi and holding that the rule of Apprendi applies to the imposition of criminal fines). In *304 applying Apprendi , "[t]he rule's animating principle is the preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense." Ice , 555 U.S. at 168, 129 S.Ct. 711.
The distinction made by the Court in Ice is critical here. Deciding whether to impose a term of probation or a term of imprisonment "involve[s] sentencing for a discrete crime"
*435 and requires "the determination of facts that warrant punishment for a specific statutory offense." Id . at 167, 170, 129 S.Ct. 711. We therefore reject the state's argument that the reasoning of Ice conflicts with the reasoning of Buehler . We adhere to our holding in Buehler that upward dispositional departures are subject to the rule of Apprendi and Blakely .[4]
Under Buehler , the state was required to give notice to defendant, as provided in ORS 136.765, that it intended to rely on enhancement facts to increase his sentence on Count 4 from probation to imprisonment, and those findings had to be made by a jury. The state failed to comply with ORS 136.765. We therefore agree with defendant that the trial court erred and remand for resentencing.
In his fifth assignment of error, defendant contends that the trial court committed plain error when it imposed court-appointed attorney fees in the amount of $4,600 without any evidence in the record that defendant has the ability to pay them. The state concedes the error. We agree that the court erred in that regard, and that the error is plain. See, e.g. , State v. Chavez , 263 Or. App. 187, 326 P.3d 629, rev. den. , 356 Or. 163, 334 P.3d 971 (2014) (a trial court commits plain error by imposing court-appointed attorney fees when the record is silent as to the defendant's ability to pay). Based on the same considerations in Chavez , id. at 188, 326 P.3d 629, i.e. , the amount of fees ordered, the length of defendant's prison term, and the lack of evidence of ability to pay, we find it appropriate to *305 exercise our discretion to correct the error. Accordingly, we reverse the attorney-fee portion of the judgment.
Portion of judgment requiring defendant to pay attorney fees reversed; remanded for resentencing; otherwise affirmed.

"A sentence that imposes probation when the presumptive sentence is prison, or vice versa , is known as a 'dispositional departure.' " State v. Burns , 259 Or. App. 410, 416, 314 P.3d 288 (2013), appeal dismissed , 261 Or. App. 113, 323 P.3d 275 (2014) (citing OAR 213-003-0001(6) ). The court may depart from the presumptive sentence if it determines that there are substantial and compelling reasons to do so, which reasons it must state on the record. ORS 137.671 ; OAR 213-008-0001.

In doing so, the Court reversed our Supreme Court, the majority of which had held that the rule of Apprendi applied "because the imposition of consecutive sentences increased 'the quantum of punishment' imposed." Ice , 555 U.S. at 166, 129 S.Ct. 711 (quoting State v. Ice , 343 Or. 248, 265, 170 P.3d 1049 (2007) ).

In the alternative to its argument regarding Ice , the state reiterates the same argument it made in Buehler regarding how the statutory maximum sentence should be understood. We reject that argument without discussion, for the same reasons that we rejected it in Buehler .

The state notes that at least one jurisdiction, South Dakota, has concluded that the Sixth Amendment jury trial right does not attach to findings necessary to impose imprisonment rather than probation. See State v. Anderson , 867 N.W.2d 718 (SD 2015). Conversely, we note that at least one jurisdiction, Minnesota, has reached a conclusion in line with Buehler . See State v. Allen , 706 N.W.2d 40, 44-46 (Minn. 2005), cert. den. , 547 U.S. 1106, 126 S.Ct. 1884, 164 L.Ed.2d 583 (2006) ; State v. Essex , 838 N.W.2d 805, 812 (Minn. App. 2013).